THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:21-cv-201-D

RONNIE WALLACE LONG,      )
                                  )
          Plaintiff,      )
                                  )
      v.          )
                                  )
CITY OF CONCORD; VAN WALTER   )
ISENHOUR, in his Individual Capacity;  )
DAVID JOHN TAYLOR, in his Individual )      **MEMORANDUM OF LAW IN**
Capacity; the Estate of GEORGE MONROE )   **SUPPORT OF DEFENDANT LEA**
VOGLER, JR.; the Estate of MARSHALL  )    **AND WATTERS' MOTION TO**
JAMES LEE; the Estate of JACK MOORE;  )   **DISMISS PLAINTIFF'S FIRST**
MERL HAMILTON, in his Official      )      **AMENDED COMPLAINT**
Capacity;  GUY SMITH, in his Official   )
Capacity; GARY GACEK, in his Official   )
Capacity; and JOHN and JANE DOES 1-10, )
in their Individual Capacities; BARRY M.  )
LEA, in his individual capacity; the Estate of )
HAYWOOD R. STARLING, in his     )
individual capacity; JOHN H. WATTERS,  )
in his individual capacity; and UNKNOWN )
AGENTS OF THE STATE BUREAU OF   )
INVESTIGATION;                 )
                                  )
                                  )
          Defendants.     )

NOW COME Defendants Barry M. Lea, (hereinafter "Lea") and Defendant John H. Watters, (hereinafter  Watters") (hereinafter jointly "Moving Defendants" or "SBI Defendants") by and through undersigned counsel and submit this Memorandum of Law in support of their Motion to Dismiss.

## STATEMENT OF THE CASE

Plaintiff Ronnie Wallace Long (hereinafter "Plaintiff") filed the Complaint in this matter on May 3, 2021, in the United States District Court for the Eastern District of North Carolina,

Western Division. [D.E.1] On June 11, 2021, Plaintiff filed his First Amended Complaint. [D.E.24] The First Amended Complaint asserts 42 U.S.C. § 1983 claims against Moving Defendants claiming that they deprived Plaintiff of his constitutional rights. Plaintiff also asserts pendent North Carolina claims against the Moving Defendants. Plaintiff is seeking declaratory judgment, compensatory and punitive damages. [D.E.24 at pg. 102] The First Amended Complaint does not always specify as to whether Moving Defendants are being sued in their official or individual capacities or both.

Plaintiff's First Amended Complaint raises eight counts against Moving Defendants:

(1) Count I (Civil Conspiracy to Deprive Plaintiff of his Constitutional Rights in violation of the Fourteenth Amendment Procedural and Substantive Due Process rights pursuant to 42 U.S.C. § 1983 against Defendant Lea in his individual capacity);

(2) Count II (Deprivation of Due Process and Access to the Court Claim in violation of the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against Defendant Lea unspecified whether brought in his individual or official capacity);

(3) Count IV (Withholding Exculpatory Evidence Claim in violation of the Fourteenth Amendment Procedural and Substantive Due Process rights pursuant to 42 U.S.C. § 1983 against Defendant Lea in his individual capacity);

(4) Count VII (Federal Malicious Prosecution Claim in violation of the Fourteenth Amendment Procedural and Substantive Due Process rights pursuant to 42 U.S.C. § 1983 against Defendant Lea in his individual capacity);

(5) Count X (Claim for Deprivation of Due Process and Access to the Courts in violation of the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against Defendant Watters in his individual capacity);

(6) Count XVI (Pendent North Carolina State Law Claim for Obstruction of Justice against Defendants Lea and Watters, unspecified whether brought in their individual or official capacities);

(7) Count XVII (Claim pursuant to Article I, Section 19-20 of the North Carolina Constitution for Violations of Due Process against Defendants Lea and Watters, unspecified whether brought in their individual or official capacities);

(8) Count XVIII (separately pled claim for punitive damages).

2

A summons was issued to each Moving Defendant. Lea and Watters have been served. A summons for the Estate of Haywood R. Starling was sent addressed to a Ms. Harriet Coley, however the Estate of Haywood R. Starling was closed prior to this action being filed. Upon information and belief, Mr. Haywood Starling died in 2019. Since the Estate has been closed, it would be incumbent upon the Plaintiff to re-open the Estate as a creditor in order to properly file a claim against the Estate. Additionally, the Estate of Charles D. Chambers was served on September 9, 2021, wherefore a response is not yet due for the Estate of Chambers.

On September 23, 2021, undersigned counsel filed a motion for extension of time and the Court has granted the SBI Defendants an extension of time through September 27, 2021 to file a response to the First Amended Complaint. In lieu of filing an Answer, the SBI Defendants now file their Motion to Dismiss.

## STATEMENT OF FACTS

Plaintiff's allegations as they pertain to his claims against the SBI Defendants are as follows:

On October 1, 1976, Plaintiff was convicted and sentenced to life imprisonment for first degree burglary and first degree rape in Concord, North Carolina. [D.E. 24] at ¶ 1 Plaintiff alleges that his conviction was not a result of mistake, negligence or incompetence but because of intentional or reckless misconduct of members of the Concord Police Department ("CPD"). *Id* at ¶ 3 Essentially, Plaintiff alleges that certain members of CPD, with a history of animus toward the Long family, targeted Plaintiff and manipulated the rape and burglary victim to identify Plaintiff as the perpetrator of the crimes. *Id* at ¶ 6 Plaintiff alleges, this manipulation of the victim to identify Plaintiff as the perpetrator was done for numerous reasons including that the crime was high-

3

profile and the animus towards the Plaintiff's family. *Id* at ¶¶ 5, 6

CPD investigators allegedly knew that Plaintiff had a solid alibi, his physical description did not match that of the real attacker and none of the crime-scene fingerprints matched Plaintiff. *Id* at ¶¶ 4,7,15,16. At the trial, Plaintiff alleges that CPD officers and others manipulated the jury selection process. *Id* at ¶ 18. During the trial, Plaintiff alleges that CPD investigators also suppressed exculpatory evidence including SBI lab reports that would have helped Plaintiff in his defense. This evidence was allegedly also withheld from prosecutors, Plaintiff and his attorneys in violation of *Brady*. *Id* at ¶¶ 17,19-24

Plaintiff was sentenced to two concurrent life sentences and spent over four decades in prison. *Id* at ¶ 27 Plaintiff alleges that he remained in prison for so long, not only because of the victim manipulation, influence on the jury, withholding of exculpatory evidence and animus of CPD officers towards his family but because CPD mismanaged their evidence maintenance system and failed to disclose key evidence from the initial investigation. *Id* at ¶¶ 28,29

Plaintiff alleges that Defendant Lea, as special agent of the North Carolina State Bureau of Investigation ("SBI") was assigned to work in Concord and was assigned to assist CPD with the investigation of the burglary and rape. Plaintiff alleges that Defendant Lea was complicit with all the wrongdoing of the CPD officers as mentioned above. *Id* at ¶ 32

The SBI opened an initial report on April 27, 1976, the date after the burglary and rape. *Id* at ¶¶ 33,69. Lea assisted CPD officers with collection of forensic evidence at the crime scene, interview of the victim, arresting Plaintiff, and questing of another suspect. *Id* at ¶¶ 33,70.

Plaintiff alleges Lea provided reports of the efforts investigating the crime to his supervisor Defendant Chambers as well as Defendant Starling who was serving as the director of the SBI at

4

the time. *Id* at ¶¶ 34,71. Plaintiff alleges that Chambers as Lea's supervisor and Starling as the SBI Director had knowledge that exculpatory and impeachment evidence had been collected by law enforcement personnel, however that information was not reported as required by <u>Brady</u> and are therefore also liable with the CPD officers for Plaintiff's damages. *Id* at ¶ 34.

Similar to the claims made against the CPD officers, Plaintiff also makes claims against the SBI Defendants that Plaintiff remained in prison for so long, not only because Lea worked with CPD officers in the initial crime investigation and prosecution of Plaintiff but because the SBI mismanaged their evidence maintenance system and failed to disclose key evidence from the initial investigation. *Id* at ¶ 34

In 2005, Plaintiff through his attorneys, filed a motion in Cabarrus County Superior Court to locate and preserve evidence related to the original case and investigation. *Id* at ¶ 192 On May 23, 2005, an Order was signed directing the Cabarrus District attorney, CPD and the SBI to locate and preserve all physical evidence collected in the underlying investigation. *Id* at ¶ 194 The Order directed the DA, CPD and the SBI to inform Plaintiff whether any evidence remained, preserve it and submit the evidence for inspection. On June 16, 2005, Defendant Watters, who was serving as SBI legal counsel, sent a faxed letter indicating that he could not locate the evidence. *Id* at ¶ 198 Plaintiff alleges that Defendant Watters withheld exculpatory evidence and that the records that the SBI produced on May 6, 2021 pursuant to a request should have been produced in response to the 2005 evidence order. *Id* at ¶ 199

In 2008, Plaintiff through his attorneys, filed a Motion for Appropriate Relief ("MAR"), an evidentiary hearing was conducted and in February 2009 the Court denied Plaintiff's *Brady* claims. *Id* at ¶ 218 In February 2011, the North Carolina Supreme Court affirmed the trial court's

decision denying Plaintiff's *Brady* claims. *Id* at ¶ 219 Plaintiff alleges that when his attorneys litigated the MAR *Brady* claims, they were unaware that more exculpatory evidence remained in the possession of CPD and the SBI. *Id* at ¶ 220

In 2016, Plaintiff's attorneys filed a petition for habeas corpus in federal court in the Middle District of North Carolina. *Id* at ¶ 221 The case was eventually sent to the Fourth Circuit who granted Plaintiff's petition. *Id* at ¶ 224 Plaintiff alleges that this outcome would have been achieved earlier if the 2005 evidence order had been complied with. *Id* at ¶ 224

In August 2020, the Fourth Circuit issued an *en banc* opinion holding that Plaintiff's rights were violated when CPD withheld evidence from prosecutors in advance of Plaintiff's criminal trial. *Id* at ¶ 244 In August 2020, Following the Fourth Circuit opinion, the federal Middle District of North Carolina issued an order vacating Plaintiff's convictions and ordering his release from custody. *Id* at ¶ 245 In December 2020, Governor Roy Cooper issued Plaintiff a pardon of innocence. *Id* at ¶ 2, 248

## **STANDARD OF REVIEW**

In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the party asserting subject matter jurisdiction has the burden to prove its existence, regardless of the allegations in his complaint. *See, e.g., KVOS v. Associated Press,* 299 U.S. 269, 278, 57 S. Ct. 197, 201, 81 L. Ed. 183, 188 (1936). A motion to dismiss for lack of jurisdiction may test the legal sufficiency of the allegations to support jurisdiction, or the motion may contest the facts alleged to support jurisdiction. *Adams* v *Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When determining the existence of subject matter jurisdiction, a court may consider the pleadings as evidence and may also look to evidence outside the pleadings without treating the inquiry as one for summary judgment. *Evans*

*v. B.F. Perkins Co*., 166 F.3d 642, 647 (4th Cir. 1999).

A motion filed under Rule 12(b)(2) of the Federal Rules of Civil Procedure tests the Court's jurisdiction over an individual. The burden is on the Plaintiff to demonstrate that jurisdiction is proper. *Dean v. Motel 6 Operating L.P*., 134 F.3d 1269, 1272 (6th Cir. 1988). Plaintiffs must set forth specific facts showing that the court has jurisdiction over the individual. *Weller v. Cromwell Oil Co*., 504 F. 2d. 927, 930 (6th Cir. 1974). Although a plaintiff who opposes a Rule 12(b)(2) motion is entitled to have all reasonable inferences drawn in his favor, the court is not required to look solely to plaintiff's proof. *Mylan Labs, Inc. v. Akzo, N.V*., 2 F.3d 56, rev'd on other grounds, 7 F. 3d 1130 (4th Cir. 1993).

Finally, in evaluating a motion to dismiss under Rule 12(b)(6) for failing to state a claim upon which relief may be granted, "a court must accept the factual allegations of the complaint as true." *G.E. Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). To survive, "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 678, 173 L. Ed. 2d 868, 884 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It is well settled law that a claim is facially plausible when it sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 663. However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (*quoting Twombly*, 550 U.S. at 555, 557) (internal brackets and quotation marks omitted). To the contrary, this "plausibility standard" requires that plaintiffs

7

articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *See Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Additionally, dismissals should be granted when warranted; the Rule 12(b)(6) procedure for early dismissal "streamlines litigation by dispensing with needless discovery and fact finding." *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989).

Moreover, the Fourth Circuit has held that courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) Courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

## LEGAL ARGUMENT

### PLAINTIFF'S ALLEGATIONS FAIL TO MAKE OUT PLAUSIBLE CLAIMS UNDER 42 U.S.C. § 1983 FOR VIOLATIONS OF ANY CONSTITUTIONAL RIGHTS.

### All of Plaintiff's claims against Moving Defendants brought in their official capacities are barred by the Eleventh Amendment to the United States Constitution.

In counts two, sixteen and seventeen, Plaintiff brings claims against Moving Defendants and does not indicate what capacities Moving Defendants are being sued. Assuming the Plaintiff intended to sue Moving Defendants in their official capacities, those claims are barred by the Eleventh Amendment to the United States Constitution.

It is well-settled that pursuant to the Eleventh Amendment, states, state agencies, and state employees sued in their official capacities are immune from suit in federal court. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Joseph v. Board of Regents, 432 F. 3d 746*, 748 (7th Cir. 2005). At all relevant times, Moving Defendants

Case 5:21-cv-00201-D   Document 46   Filed 09/27/21   Page 8 of 36

were employees of the SBI acting in their official capacities. The SBI is an agency of the State of North Carolina funded by the North Carolina General Assembly. N.C.G.S. § 143B-915. A judgment against this agency would be a judgment against the State. *Huang v. Board of Governors of UNC*, 902 F.2d 1134, 1138 (4th Cir. 1990); *see also, Roberson v. Dale*, 464 F. Supp. 680, 689 (M.D.N.C. 1979). Accordingly, for purposes of this action, the SBI Defendants are alter egos of the State of North Carolina and the Eleventh Amendment operates to bar Plaintiff from pursuing his claims against these SBI Defendants acting in their official capacities. *See Raynor v. Regents of the Univ. Of Minn*, 534 U.S. 533, 540-41, 122 S.Ct. 999, 1004, 152 L. Ed. 2d 27, 36(2002); *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 120, 104 S. Ct. 900, 918, 79 L. Ed. 2d 67, 91 (1984); *Huang v. Board of Governors*, 902 F.2d at 1138.

While the United States Supreme Court has held that a state may waive the protection of the Eleventh Amendment by unequivocal state statute or state constitutional provision (see *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S. Ct. 1347, 1361, 39 L. Ed. 2d 662, 678 (1974); the State of North Carolina has not waived its Eleventh Amendment immunity to permit direct claims against the State to be brought against it in federal court. Specifically, the Fourth Circuit Court of Appeals has held that the State of North Carolina has not waived its Eleventh Amendment immunity by statute. *Huang v. Board of Governors*, 902 F.2d at 113. North Carolina has not waived is Eleventh Amendment immunity by constitutional provision either. *Stewart v. Hunt*, 598 F. Supp. 1342, 1350-51 (E.D.N.C. 1984). Therefore, all Counts of the First Amended Complaint that allege claims against Moving Defendants, in their official capacities, must be dismissed.

**ANY CLAIMS AGAINST MOVING DEFENDANTS IN THEIR INDIVIDUAL CAPACITY SHOULD BE DISMISSED BECAUSE THEY ARE IS ENTITLED TO QUALIFIED**

9

**IMMUNITY.**

In counts one, two, four, seven, ten, sixteen, seventeen and eighteen, Plaintiff alleges violations of his constitutional rights by Moving Defendants. While denied by Moving Defendants, assuming *arguendo* that Plaintiff has alleged sufficient facts to support his claims of constitutional rights violations, Moving Defendants in their individual capacity are nonetheless entitled to qualified immunity. "A government official is entitled to qualified immunity from civil damages for performing discretionary functions when his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Taylor v. Waters, 81 F.3d at 433 (1996) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)). "Qualified immunity, when found to apply, bars § 1983 suits against government officers in their individual capacity." *Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009). "Qualified immunity provides 'an immunity from suit rather than a mere defense to liability[.]'" *Cloaninger*, 555 F.2d at 330. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id*.

Qualified immunity "gives ample room for mistaken judgements" and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271, 278 (1986); *see Maciariello v. Sumner*, 973 L. Ed. 2d 295, 298 (4th Cir. 1992) (holding that "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."); *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998) (holding that "if no right is transgressed, our inquiry ends, because government officials cannot have known of a right that does not exist). "Ruling on a defense of qualified immunity

therefore requires (1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the officer's position would have known that doing what he did would violate the right." *Porterfield*, 156 F.3d at 567.

To state an individual capacity suit, Plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). "Personal capacity suits impose personal liability on a government official for actions he takes under color of state law." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Liability will only lie where it is affirmatively shown that the official charged personally in the deprivation of plaintiffs' rights.

For a law enforcement officer to lose his qualified immunity "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Determination of qualified immunity may be made at either the motion to dismiss or summary judgment stage, however, "[t]he Supreme Court has 'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Id*. (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 589 (1991))

"The right must be sufficiently particularized to put potential defendants on notice that their conduct is probably unlawful." *Gooden v. Howard County*, 954 F.2d 960, 968 (4th Cir. 1992) (*quoting Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir. 1986)). The applicability of qualified immunity is to be assessed at "the time at which the action or inaction occurred." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982); *see also Graham*

11

*v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (determination regarding the reasonableness of an officer's use of force should not be judged "with the 20/20 vision of hindsight")

When Defendant Lea was involved in the investigation of the 1976 burglary and rape, he had probable cause that Plaintiff was involved in the crimes. Just like Qualified Immunity, Probable Cause goes to what the Defendant knew at the time in 1976 and what were his intentions. "Probable cause exists when the facts and circumstances known to the officer are sufficient to warrant an objectively reasonable person in believing 'that the suspect has committed, is committing, or is about to commit an offense.'" *Ross v. Early*, 746 F.3d 546, 561 (4th Cir. 2014). "Probable cause is determined from the totality of the circumstances known to the officer ...." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002); *United States v. Garcia*, 848 F.2d 58, 59-60 (4th Cir. 1988). Probable cause is a commonsense, nontechnical concept that "deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695, 116 S. Ct. 1657, 1661 (1996). The circumstances are weighed "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *United States v. Dickey-Bey*, 393 F.3d 449, 453 (4th Cir. 2004). Thus, probable cause requires substantially less evidence than is necessary to convict. *See, e.g., Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998). Indeed, the Fourth Circuit has specifically rejected the argument that "probable cause means more likely than not, [more than] 50/50," and made it clear that "the probable-cause standard does not require that the officer's belief be more likely true than false." *United States v. Humphries*, 372 F.3d 653, 660 (4th Cir. 2004) *23 (emphasis added). Moreover, "an arresting officer's state of mind (except

12

for the facts he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 593-4 (2004). Whether probable cause exists, under a particular set of facts, is a question of law. *See, e.g., Park v. Shiflett*, 250 F.3d 843, 849-50 (4th Cir. 2001)

If the facts could establish a constitutional violation, the Court must analyze whether the constitutional right alleged to have been violated was "clearly established" at the time of the officer's actions. *Crawford-El v. Britton,* 523 U.S. 574, 588-589, 118 S. Ct. 1584, 1592 (1998).  In considering this second prong of the Saucier framework, the key issue is whether the law "gave the officials 'fair warning' that their conduct was unconstitutional." *Ridpath v. Board of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006). In order for an officer to lose the protection of qualified immunity, existing precedent at the time of the occurrence must show that it was "beyond debate" that the officer's specific actions violated the Constitution. *Mullenix v. Luna*, 577 U.S. ___, 136 S.Ct. 305, 308-9 and 312 (2015) (per curiam); *Ashcroft v. al-Kidd*, 563 U.S. 731,741, 131 S. Ct. 2074, 2083 (2011); *Kisela v. Hughes*, ___ U.S. ___, 138 S.Ct. 1148, 1152 (2018) (per curiam); *City and County of San Francisco, Calif. v. Sheehan*, 572 U.S. ___, 135 S.Ct. 1765, 1774 (2015). Thus, the inquiry into whether the right was clearly established must "be undertaken in light of the specific context of the case" and "not as a broad general proposition ...." Saucier, supra. Also, "[b]ecause the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, supra. *See also, e.g., Meyers v. Baltimore County, Md*., 713 F.3d 723, 731 (4th Cir. 2013); *Hill v. Crum*, 727 F.3d 312, 322 (4th Cir. 2013).

An inquiry under the qualified immunity analysis must be particularized and fact-specific. *Anderson v. Creighton*, 483 U.S. 635, 640-41, 107 S.Ct. 3034, 3039-40 (1987). Thus, a Court

analyzing whether officers are entitled to qualified immunity must focus on what each individual officer knew, when he knew it, and what specific actions he did or did not take. *See, e.g., Mullenix, supra.; Saucier, supra.; Kisela, supra.; Slattery, supra.*

Moving Defendants are entitled to qualified immunity. Moving Defendants did not violate Plaintiffs' constitutional rights. However, even assuming arguendo that Plaintiffs' constitutional rights were violated, officers in the same circumstances could have believed that their conduct was lawful. Thus, the officers are entitled to qualified immunity. Assuming arguendo that Plaintiffs' constitutional rights were violated, Saucier instructs that a court proceed to the second step of the qualified immunity analysis. Saucier, 533 U.S. at 201, 121 S.Ct. at 2156. In the instant case, the relevant inquiry is whether it was "beyond debate," given the state of the law during the relevant time period, that the specific actions taken by the officers, in the specific circumstances of the case, violated the Constitution. Put another way, the officers are entitled to qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful."

As shown at length above, the case law applied to the facts show that the officers did not violate Plaintiffs' constitutional rights. However, even assuming arguendo that the law applied to the facts could possibly show a constitutional violation, no existing precedent puts it "beyond debate" that the officers' actions violated the Constitution. See, e.g., *Mullenix*, supra. Thus, because a reasonable officer could have believed that the officers' actions were lawful, the SBI Defendants are entitled to qualified immunity.

**ANY CLAIMS AGAINST MOVING DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES SHOULD BE DISMISSED BECAUSE THEY ARE ENTITLED TO PUBLIC OFFICIAL IMMUNITY.**

In counts one, two, four, seven, ten, sixteen, seventeen and eighteen, Plaintiff brings claims

14

against Moving Defendants in their individual capacity. Each of these claims must be dismissed as Moving Defendants are entitled to public official immunity. "To maintain a suit against a public official in his/her individual capacity, the plaintiff must make a *prima facie* showing that the official's actions (under color of authority) are sufficient to pierce the cloak of official immunity." *Moore v. Evans*, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996). "As a general rule it is presumed that a public official in the performance of his official duties 'acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." *Green v. Town of Valdese*, 306 N.C. 79, 82, 291 S.E.2d 630, 632 (1982). A public official performing discretionary acts can be liable for wrongdoing only (1) if the wrongdoing occurs outside the scope of official authority or if the conduct is (2) malicious or (3) corrupt. *Moore v. Evans, supra; Epps v. Duke University, Inc*., 122 N.C. App. 198, 207, 468 S.E.2d 846, 853, *rev. denied*, 344 N.C. 436, 476 S.E.2d 115 (1996).

For purposes of public official immunity, an official acts with malice only "when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty *and* which he *intends to be prejudicial or injurious to another*." *Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984) (emphasis added). An act is wanton if it is done with a wicked purpose or with reckless indifference to the rights of others. *Id*.

The First Amended Complaint does not describe any alleged conduct of Defendants Watters or Lea that was intended to cause the Plaintiff injury, that was corrupt (i.e., for his undue personal benefit), or that occurred outside the scope of their duties. All Plaintiff does is make a conclusion and has failed to allege any facts.

Plaintiff's allegations do not in any way create a plausible inference that Watters or Lea

15

acted outside the scope of their employment, that they acted corruptly (e.g., for personal benefit), or that they "intended his actions to be prejudicial or injurious" to the Plaintiff. *Marlowe v. Piner*, 458 S.E.2d 220, 223 (N.C. App. 1995).

Plaintiff's claims must therefore be dismissed on grounds of public official immunity. *See Marlowe, supra* (granting summary judgment dismissing claims against deputy sheriff in his individual capacity for false imprisonment and false arrest based upon public official immunity where evidence showed that "[a]t most" plaintiff had presented evidence showing that defendant "*negligently* believed he had probable cause to arrest plaintiffs); *Olvera v. Edmundson*, 151 F. Supp. 2d 700 (W.D.N.C. 2001) (dismissing wrongful death claim against sheriff under Rule 12(b)(6) based upon public official immunity since plaintiff alleged only that the sheriff acted with *deliberate indifference* towards decedent rather than having an *intention* to injure or otherwise prejudice the decedent); *Jetton v. Caldwell County Board of Education*, 2007 WL 3015252 (N.C. App. August 7, 2007) ("While Defendants may not have always acted in a professional manner, or treated Plaintiff with patience, respect, or kindness, there is no evidence they intended to hurt Plaintiff. Any alleged harm resulting to Plaintiff from Defendants' allegedly improper conduct was simply a collateral consequence"); *Compare Blair v. County of Davidson*, 2006 U.S. Dist. Lexis 34253 (M.D.N.C. May 10, 2006) (public official immunity claim rejected where plaintiff alleged among other things that the law enforcement defendants repeatedly shocked and burned her with high voltage taser devices, forced her to assume lewd poses and "reveal her genitals" while others made salacious comments, and kicked, assaulted, and battered her)

Allowing the claims against SBI Defendants to go forward would be contrary to the purpose served by the public official immunity doctrine. North Carolina's public official immunity

16

doctrine grows out of a strong public policy concern that "it would be difficult to find those who would accept public office or engage in the administration of public affairs if they were to be held personally liable for acts or omissions involved in the exercise of discretion and sound judgment which they had performed to the best of their ability, and without any malevolent intention toward anyone who might be affected thereby." *Miller v. Jones*, 32 S.E.2d 594 (N.C. 1945).

North Carolina courts have wisely concluded that law enforcement officers will perform their public duties more faithfully when freed from the fear that discretionary decisions they make in the course of an investigation will be second guessed in a subsequent civil lawsuit absent extreme circumstances such as personal malice, corruption, or action outside the course and scope of employment. *Evans v. Chalmers,* 703 F.3d 636, 648 (4th Cir. 2012) Since Plaintiff failed to allege acts that fall within any of these excepted categories, elicit any evidence that Defendants Watters or Lea acted with personal malice, corruption, or outside the course and scope of his duties. The public official immunity doctrine protects Defendants Watters or Lea from liability to Plaintiff in this case.

## **PLAINTIFF'S CLAIMS AGAINST MOVING DEFENDANTS MUST BE DISMISSED FOR FAILURE TO STATE A PLAUSABLE CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

In Counts I, II, IV, VII, and X, Plaintiff brings claims against Moving Defendants pursuant to 42 U.S.C. § 1983. Plaintiff's First Amended Complaint does not include any statement or allegation against Moving Defendants that gives rise to a plausible claim pursuant to 42 U.S.C. § 1983 upon which relief may be granted. Plaintiff also fails to allege Moving Defendants' actions caused him any injury necessary to sustain a cause of action for violations under 42 U.S.C. § 1983. Therefore, Plaintiff's First Amended Complaint should be dismissed pursuant to Rule 12(b)(6) for

17

failure to state a claim upon which relief may be granted.

Under 42 U.S.C. § 1983, the Plaintiff must establish (1) that the actions complained of were done by a person acting under color of state law, and (2) that these actions deprived the Plaintiffs of rights, privileges or immunities secured by the Constitution or laws of the United States and (3) the acts of deprivation caused by that Defendant proximately caused the damages which Plaintiff sustained. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994); *Ruark v. Solano*, 928 F.2d 947, 949 (10th Cir.1991); *Greco v. Guss*, 775 F.2d 161, 164 (7th Cir.1985); *McDonald v. Dunning*, 760 F.Supp. 1156 (E.D.Va.1991). Whether a person is subject to a § 1983 suit turns upon the ultimate question of whether the alleged infringement of federal rights which caused cognizable injury is fairly attributable to the state. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). *See also, Spell v. McDaniel*, 824 F.2d 1380, 1387-88 (4th Cir.1987)(the causal connection must be proximate, not merely "but-for" causation-in-fact) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)).

Although Plaintiff has in vague terms alleged he was damaged by the Moving Defendants' actual actions, he has failed to allege the injury or damage caused by any specific violation that the Moving Defendants have alleged to have done. Applying the Supreme Court's Iqbal standard, "[N]aked assertions devoid of further factual enhancement" are not sufficient to survive a motion to dismiss." *Iqbal*, 556 U.S. at 678.

The First Amended Complaint is deficient because it fails to allege that the SBI defendants lacked probable cause based on the information they had at the time and what was their state of mind. "Probable cause is determined from the totality of the circumstances known to the officer ...." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002); *United States v. Garcia*, 848 F.2d 58,

18

59-60 (4th Cir. 1988). Probable cause is a commonsense, nontechnical concept that "deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695, 116 S. Ct. 1657, 1661 (1996). The circumstances are weighed "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *United States v. Dickey-Bey*, 393 F.3d 449, 453 (4th Cir. 2004). Thus, probable cause requires substantially less evidence than is necessary to convict. *See, e.g., Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998). Indeed, the Fourth Circuit has specifically rejected the argument that "probable cause means more likely than not, [more than] 50/50," and made it clear that "the probable-cause standard does not require that the officer's belief be more likely true than false." *United States v. Humphries*, 372 F.3d 653, 660 (4th Cir. 2004) *23 (emphasis added). Moreover, "an arresting officer's state of mind (except for the facts he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 593-4 (2004). Whether probable cause exists, under a particular set of facts, is a question of law. *See, e.g., Park v. Shiflett*, 250 F.3d 843, 849-50 (4th Cir. 2001)

Here, however, the First Amended Complaint is deficient not only for failing to allege deprivation or its means, but for the failure to show what injury he claims that is not otherwise redressable. *See Sproul v. City of Wooster*, 840 F.2d 1267(6th Cir.1988). In due process cases, the Plaintiff must allege that "(1) there was a deprivation of a constitutional right; (2) ... it was under color of law; and (3) the state remedy was inadequate, both in form and in substance." *Haag v. Cuyahoga County*, 619 F.Supp. 262, 271 (N.D.Ohio 1985) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). The Plaintiff bears the burden of pleading "that state damage remedies are inadequate to redress the alleged wrong before he can resort to a damages action for a deprivation of

19

procedural due process under 42 U.S.C. § 1983." *Sproul v. City of Wooster*, 840 F.2d at 1270. Clearly, the Plaintiff's Complaint fails in each of these aspects because such a Plaintiff must make "specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir.1987).

Further, to state a claim for relief under 42 U.S.C. § 1983, a Plaintiff must allege and bring forward the violation of a right secured by the federal Constitution and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal constitutional rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994). See *Hinkle v. City of Clarksburg*, 81 F.3d 416, 420 (4th Cir. 1996) (explaining that before a governmental entity can be held liable under § 1983 in its official capacity, there must be a deprivation of a specifically identified federal right). *See also Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).*

**Plaintiff's Civil Conspiracy Claim against Defendant Lea in his individual capacity should be dismissed for failure to state a claim upon which relief may be granted.**

In count one, Plaintiff brings a civil conspiracy claim against the Concord Police Defendants and includes Defendant Lea in that claim. Plaintiff alleges that Defendant Lea was complicit with all the wrongdoing of the CPD officers. *Id* at ¶ 32 Plaintiff has failed to state a claim for civil conspiracy against Defendants Lea as there are no factual allegations to support the Plaintiff's conclusory allegations that a conspiracy existed between Defendant Lea and the Concord Police Department

20

Defendants.

In North Carolina a threshold requirement for a conspiracy claim is evidence that a conspiracy in fact existed, meaning the complaint must show "proof of an agreement between two or more people". *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 801 (2005); quoting *Henderson v. LeBauer*, 101 N.C. App. 255, 261, 399 S.E.2d 142, 145 (1991) (citations omitted). "A threshold requirement in any cause of action for damages caused by acts committed pursuant to a conspiracy must be the showing that a conspiracy in fact existed. The existence of a conspiracy requires proof of an agreement between two or more persons. Although civil liability for conspiracy may be established by circumstantial evidence, the evidence of the agreement must be sufficient to create more than a suspicion or conjecture in order to justify submission to a jury." *Henderson v. LeBauer*, 101 N.C. App. 255, 261, 399 S.E.2d 142, 145 (1991). Here, the First Amended Complaint does not contain any detailed, factual allegations that there was an actual agreement between the Concord Police Department Defendants and Defendant Lea. The Plaintiff only makes conclusory allegations.

Additionally, there is not a separate civil action for civil conspiracy in North Carolina. *See Shope v. Boyer*, 268 N.C. 401, 404–05, 150 S.E.2d 771, 773–74 (1966); *Fox v. Wilson*, 85 N.C. App. 292, 300, 354 S.E.2d 737, 742–43 (1987). "Accurately speaking, there is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone. The gist of the civil action for conspiracy is the act or acts committed in pursuance thereof—the damage—not the conspiracy or the combination. The combination may

21

be of no consequence except as bearing upon rules of evidence or the persons liable." *Johnson v. Beverly–Hanks & Associates, Inc.*, 97 N.C. App. 335, 388 S.E.2d 584, disc. review on additional issues denied, 326 N.C. 482, 392 S.E.2d 90 (1990) Accordingly, Plaintiff's Civil Conspiracy Claim against Defendant Lea in his individual capacity should be dismissed for failure to state a claim upon which relief may be granted.

### Plaintiff's Deprivation of Due Process and Access to the Courts Claim against Defendant Lea and Defendant Watters in their individual capacities should be dismissed for failure to state a claim upon which relief may be granted.

In count two, Plaintiff brings an access to courts claim against the Concord Police Defendants and includes Defendant Lea in that claim. Plaintiff alleges that Defendant Lea was complicit with all the wrongdoing of the CPD officers. *Id* at ¶ 32 Plaintiff has failed to state a claim for Access to Courts against Defendants Lea as there are no factual allegations to support the Plaintiff's conclusory allegations that Defendant Lea deprived Plaintiff of his due process or access to the courts.

In count ten, Plaintiff also brings an access to courts claim against Defendant Watters in his individual capacity. Defendant Watters, who was serving as SBI legal counsel, is alleged to have deprived Plaintiff of his access to the courts from 2005 to 2009 "by concealing from Long's post-conviction attorneys exculpatory and impeachment evidence that could have been used as the basis for vacating Long's 1976 wrongful convictions." [D.E.24] ¶¶ 369 Plaintiff has failed to state a claim for Access to Courts against Defendants Watters as there are no factual allegations to support the Plaintiff's conclusory allegations that Defendant Watters deprived Plaintiff of his due process or access to the courts. The First Amended Complaint assertions against Watters are merely conclusory allegations and do not give rise to a claim.

"It is well established that citizens have a right of access to the courts." *Pollard v. Pollard*, 325 Fed. Appx. 270, 272 (4th Cir. 2009). The Supreme Court has divided denial-of-access claims into two categories: (1) forward-looking claims, wherein "systemic official action frustrates a plaintiff or plaintiff-class in preparing and filing suits at the present time"; and (2) backward-looking claims, wherein "official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief." *Christopher v. Harbury*, 536 U.S. 403, 412-414 (2002).

In a backward-looking claim, "the complaint must identify a remedy that may be awarded as recompense *but not otherwise available*." *Id.* at 415 (emphasis added). "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Id.* All elements in a denial-of-access claim, including the lost remedy, must be "addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416. In sum, *Christopher* requires a backward-looking claim to allege a unique remedy that was lost and no longer available in a current or future lawsuit. Courts across the nation have held that a plaintiff cannot bring a backwardlooking denial-of-access claim for an alleged concealment of evidence while claims against the underlying tortfeasors are pending or successfully completed. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1209 (10th Cir. 2004); *Estate of Smith v. Marasco*, 318 F.3d 497, 511-12 (3d Cir. 2003); *Davis v. County of Amherst, Va.*, 2008 WL 2421091 at *2-3 (W.D. Va.June 13, 2008) (granted motion to dismiss denial-of-access claim against Sheriff who attempted to conceal misconduct by his deputies because plaintiff "*has not explained what unique*

23

*remedy she seeks that would otherwise be unavailable*"); *Iko v. Galley*, 2006 WL 8449023 at *9 (D. Md. June 16, 2006) (denied as futile a motion to amend a denial-of-access claim because "Plaintiffs have failed to state specifically how [defendant's] actions frustrated them in preparing and filing their suit and how his actions have negatively impacted their access to the courts, *especially in light of the litigation pending currently*); *Love v.Bolinger*, 927 F. Supp. 1131, 1138-39 (S.D. Ind. 1996) (dismissed denial-of-access claim by decedent's family against police officers who allegedly covered-up the murder because "the very fact that allegations of the murder and of the cover-up *appear together in a single complaint*…leaves no doubt that plaintiffs were not hindered in bringing a lawsuit to vindicate their rights"). These cases involved active cover-ups, and still the courts dismissed the denial-of-access claims.

In this case, Plaintiff is not seeking any type of unique relief that he cannot get through his other claims against the Concord Police Department Defendants. In fact, Plaintiff's First Amended Complaint requests nearly identical claims for relief. All of Plaintiff's claimed relief could be granted through his pending claims against the Concord Police Department Defendants, who are ultimately responsible for his prosecution and incarceration (not the SBI Defendants). Given that Plaintiff has failed to allege a remedy that is not otherwise available, he has failed to state a valid backward-looking denial-of access claim. Therefore, the Court should dismiss the claims against Defendant Lea and Watters.

**Plaintiff's Malicious Prosecution Claim against Defendant Lea in his individual capacity should be dismissed for failure to state a claim upon which relief may be granted.**

In count seven of the First Amended Complaint, Plaintiff alleges he was maliciously prosecuted by the Concord Police Department and Defendant Lea. Plaintiff's claim for malicious prosecution against Defendant Lea should be dismissed for failure to state a claim upon which

24

relief may be granted.

"Plaintiff must establish four elements to support a malicious prosecution claim: (1) defendant initiated the earlier proceeding; (2) malice on the part of defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff." *Best v. Duke University*, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994) (citations omitted). Plaintiff's claim for malicious prosecution against Defendant Lea fails because he has not alleged that Defendant Lea initiated the criminal proceeding against him.

There are no allegations of specific conduct taken by Defendant Lea and this claim is subject to dismissal on this basis alone. Concord Police took out the warrant, arrested the Plaintiff, etc. [D.E.24] ¶¶ 103-105. Even if Plaintiff could allege that Defendant Lea took some action relating to the prosecution of Plaintiff, which is denied, Plaintiff's claim against Defendant Lea is subject to dismissal because there is no independent cause of action for a section 1983 malicious prosecution claim. *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000)

There is no separate claim for Malicious Prosecution pursuant to 42 U.S.C. § 1983. The Fourth Circuit Court of Appeals has held that: In limited circumstances, a claim for malicious prosecution is permissible pursuant to § 1983 to redress a claim that meets the common law standards for malicious prosecution and alleges violations of a plaintiff's Fourth Amendment constitutional rights. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 (4th Cir. 1996);

However, the Fourth Circuit clarified the holding of Brooks and held "that there is no such thing as a § 1983 malicious prosecution claim. . . . it is simply a claim founded on a Fourth Amendment seizure . . . [i]t is not an independent cause of action." *Lambert v. Williams*, 223 F.3d

25

257, 262 (4th Cir. 2000). The Court further held that that "to state such a claim for malicious prosecution under § 1983, a plaintiff must establish both an unreasonable seizure as well as a termination of the criminal proceeding favorable to him." *Id*. at 61-62 (4th Cir. 2000); *Vaughn v. Whitfield*, No. 8:12-cv-2405-RMG, 2013 U.S. Dist. LEXIS 130279, 2013 WL 5144751, at 3 (D.S.C. 12 Sept. 2013) (noting that to the extent plaintiff may assert a malicious prosecution claim pursuant to § 1983, he must "first show an unreasonable seizure and then a favorable termination of the criminal proceeding flowing from the seizure").

In essence, the "plaintiff must show 'that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.'" *Bryant v. Carico*, No. 15-1082, 2015 U.S. App. LEXIS 16639, 2015 WL 5472642, at 1 (4th Cir. 18 Sep. 2015) (quoting *Evans v.Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)).

Furthermore, any subsequent detention of Plaintiffs pending trial was a reasonable Fourth Amendment seizure supported by legal process in that North Carolina law required that upon arrest Plaintiff be taken before a magistrate and necessitated grand jury proceedings to transfer the case to Superior Court prior to trial. The Fourth Circuit Court of Appeals has held that "[o]nce a pretrial seizure has been rendered reasonable by virtue of a probable cause determination by a neutral and detached magistrate, the continuing pretrial seizure of a criminal defendant - - either by detention or by bond restrictions - - is reasonable." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 (1996). Accordingly, Plaintiff's Malicious Prosecution Claim against Defendant Lea in his individual capacity should be dismissed for failure to state a claim upon which relief may be granted.

**Plaintiff's Claim for Withholding Exculpatory Evidence against Defendant Lea in his individual**

26

**capacity should be dismissed for failure to state a claim upon which relief may be granted.**

In count four, Plaintiff brings an access to courts claim against Defendant Lea for withholding exculpatory evidence. In count eleven, Plaintiff brings a claim against Defendant Lea in his individual capacity for withholding exculpatory evidence. These are *Brady*-based Due Process claims. As shown below, Plaintiff's *Brady*-based Due Process claims fail as a matter of law.

In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that a prosecutor's suppression of material exculpatory evidence violates the Due Process clause. In the case of *Owens v. Baltimore State Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), the Fourth Circuit held that in order for a plaintiff to make out a Due Process claim that officers violated his constitutional right by suppressing exculpatory *Brady* evidence, a plaintiff must prove that the officers suppressed material *Brady* exculpatory evidence in bad faith. 767 F.3d at 396-97, 401.

Moreover, in order to prove a Due Process violation, Plaintiff must prove both but-for causation and proximate causation - i.e., that the alleged wrongful act(s) caused the loss of liberty and that the loss of liberty was a reasonably foreseeable result of the act. *See Massey v. Ojaniit*, 759 F.3d 343, 354-356 (4th Cir. 2014); *Evans v. Chalmers*, 703 F.3d 636, 647-8 (4th Cir. 2012).

In order to satisfy *Brady*'s materiality requirement, Plaintiff must show that the suppression "cast serious doubt on the proceedings' integrity," *Owens*, 767 F.3d at 398, or "undermine[s] confidence in the outcome" of the case. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). However, "the mere possibility that an item of undisclosed information might have helped the defense ... does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-110, 96 S.Ct. 2392 (1976).

Significantly, it is well established that undisclosed evidence is not considered to be "suppressed"

27

under *Brady* when the criminal defendant or his attorney could have obtained the evidence with any reasonable diligence. *See Lynn v. Tanney*, 405 Fed.Appx. 753, 762 (4th Cir. 2010). Therefore, the *Brady* rule is not violated when the evidence that is not disclosed is "available to the defendant from other sources, including diligent investigation by the defense." *Fullwood v. Lee*, 290 F.3d 663, 686 (4th Cir. 2002), quoting *Stockton v. Murray*, 41 F.3d 920, 927 (4th Cir. 1994). For example, in *United States v. Wilson*, 901 F.2d 378 (4th Cir. 1990), the Court held that the government's alleged failure to turn over an exculpatory witness statement did not violate Brady because the criminal defense "was free to question" the witness, and "it would have been natural" for the defense to interview the witness. The Court held: "In situations ... where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine." 901 F.2d at 381.

Similarly, in *Hoke v. Netherland*, 92 F.3d 1350 (4th Cir. 1996), the Court held that the State's failure to disclose interviews of three witnesses did not violate *Brady* where the attorney would have discovered the witnesses if he had conducted a "reasonable and diligent investigation." 92 F.3d at 1355-56. As the Court stated in *Barnes v. Thompson*, 58 F.3d 971 (4th Cir. 1995): *Brady* requires that the government disclose only evidence that is not available to the defense from other sources, either directly or through diligent investigation .... Nondisclosure, therefore, does not denote that no exculpatory evidence exists, but that the government possesses no exculpatory evidence that would be unavailable to a reasonably diligent defendant .... 58 F.3d at 975Accordingly, Plaintiff's Claim for Withholding Exculpatory Evidence against Defendants Lea in his individual capacity should be dismissed for failure to state a claim upon which relief may be granted.

**Plaintiff's Pendent North Carolina State Law Claim for Obstruction of Justice against**

28

**Defendants Lea and Watters should be dismissed for failure to state a claim upon which relief may be granted.**

In count sixteen, Plaintiff brings a pendent state law claim for obstruction of justice against Defendants Lea and Watters. It is unspecified whether the claim is brought against them in their official or individual capacities. Obstruction of Justice is a common law offense in North Carolina. *Jones v. City of Durham*, 183 N.C. App. 57, 63, 643 S.E.2d 631 (2007) "Any action intentionally undertaken by the defendant for the purpose of obstructing, impeding, or hindering the plaintiff's ability to seek and obtain legal remedy will suffice to support a claim for common law obstruction of justice." *Braswell v. Medina*, 805 S.E.2d 498, 509 (N.C. Ct. App. 2017)

There are no allegations that Defendants Lea and Watters intentionally acted in any way to prevent, obstruct, impede, or hinder Plaintiff's ability to seek and obtain a legal remedy. At most, Plaintiff has alleged that Defendants Lea and Watters were careless in their job duties, however these allegations do not support a claim against Defendants for obstruction of justice. Plaintiff, alleges that Concord Police Department were intentional and/or reckless, however Defendants Lea and Watters actions were not. For this reason and because Defendant Lea and Watters are entitled to Public Official Immunity, Plaintiff's obstruction of justice claim should be dismissed.

**Plaintiff's Claim against Moving Defendants pursuant to Article I, Section 19-20 of the North Carolina Constitution for Violations of Due Process should be dismissed for failure to state a claim upon which relief may be granted.**

In count seventeen in the First Amended Complaint, Plaintiff asserts direct claims under Article 1, Sections 19 and 20 of the North Carolina Constitution against Moving Defendants. [D.E.24] ¶¶ 400-403). Plaintiff alleges that SBI Defendants deprived him of his rights under Article 1, Sections 19 and 20 of the North Carolina Constitution. *Id.* These claims should be dismissed for

29

failure to state a claim upon which relief may be granted.

For a plaintiff to maintain a direct claim under the North Constitution there must be no adequate remedy available to provide relief from injury. *See Edwards v. City of Concord*, 827 F.Supp.2d 517, 521 (*citing Cooper v. Denlinger*, 363 N.C.App. 784, 788, 688 S.E.2d 426, 428 (2010)). "An adequate remedy is one that 'provide[s] the possibility of relief under the circumstances." *See Edwards v. City of Concord*, 877 F.Supp.2d at 521. An adequate remedy may be one existing at common law or created by statue. *See Seaton v. Owens*, 2003 U.S. Dist. LEXIS 22298, at * 20 (M.D.N.C. Dec. 8, 2003)(*citing Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995)).

Adequacy of a state remedy requires only the opportunity to be heard, and if successful to recover for the injuries alleged. *Corum v. University of North Carolina Through Board of Governors*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992). In the instant action, Plaintiff clearly has the opportunity to be heard and has other adequate (although factually deficient) claims absent the State Constitution claims. Plaintiff has alleged other claims which if true and proven would address his constitutional rights and provide him an adequate remedy. *See, e.g., Haynes v. City of Durham, N.C.*, No. 1:12CV1090, 2016 WL 469608, at *6–8 (M.D.N.C. 2016) ("Here, Plaintiffs allege claims for obstruction of justice, malicious prosecution, and negligent supervision under the North Carolina common law . . . [i]f Plaintiffs' claims against the City were the only means of redressing their alleged injuries under state law, then a direct constitutional claim might be appropriate. But here, North Carolina law provides numerous potential remedies for the injuries alleged by Plaintiffs, including claims against the Officer Defendants in their individual capacities.") If Plaintiff were to prevail, then his constitutional right would be vindicated by such

30

a state law claim. <u>Edwards v. City of Concord</u>, 827 F. Supp. 2d 517, 524 (M.D.N.C. 2011) ("Consistent with this definition, the North Carolina courts have held that a remedy is adequate if the constitutional right sought to be vindicated is protected by an available state law claim.") "…North Carolina courts have identified other state remedies adequate to replace claims of unreasonable search and seizure and of deprivation of liberty without due process under the North Carolina Constitution." *See Seaton v. Owens*, 2003 U.S. Dist. LEXIS 22298, at *20. "Because a deprivation of the property seized is the gist of an unreasonable search and seizure claim, North Carolina's common law tort claim of trespass to chattels has been held adequate to supplant the direct constitutional claim of unreasonable search and seizure. *See id.*, 2003 U.S. Dist. LEXIS 22298, at 20-21(*citing Rousselo v. Starling*, 128 N.C.App. 439, 448, 495 S.E.2d 725, 731 (1998).

**<u>Plaintiff's separately pled claim for punitive damages against Moving Defendants should be dismissed for failure to state a claim upon which relief may be granted.</u>**

In count eighteen, Plaintiff alleges a cause of action for punitive damages. As a rule one cannot have a cause of action for punitive damages by itself. *Oestreicher v. Am. Nat. Stores, Inc.*, 290 N.C. 118, 225 S.E.2d 797 (1976). Plaintiff's claim for punitive damages should be dismissed. In addition, the general rule is that there is a presumption against imposition of punitive damages on governmental entities. *Davis v. Blanchard*, 175 F. Supp. 3d 581 (M.D.N.C. 2016). There is no specific statute stating that plaintiff may recover punitive damages from the SBI, a governmental entity or the other SBI defendants acting within the scope and course of their employment.

Absent a statutory provision, explicitly removing common law immunity Plaintiff may not recover punitive damages. *Jackson v. Housing Authority of City of High Point*, 315 N.C. 259, 263, 341 S.E.2d 523, 525 (1986). Punitive damage claims against the SBI and the Defendants acting in

31

their official capacity are barred and therefore should be dismissed from the First Amended Complaint.

**Plaintiff's claims are barred by the Statute of Limitations.**

Plaintiff failed to bring these causes of action within any applicable statute of limitations and dismissal is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense. *Richmond, F. & P. R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). Plaintiff brings these claims under 42 U.S.C. § 1983, and there is no federal statute of limitations applicable to suits under this provision. "It is the rule that the applicable 'provision limiting the time in which an action [under § 1983] must be brought, must be borrowed from the analogous state statute of limitations." *Bireline v. Seagondollar*, 567 F.2d 260, 262 (4th Cir. 1977), quoting *Cox v. Stanton*, 529 F.2d 47, 49 (4th Cir. 1975). The appropriate analogous statute of limitations for actions under § 1983 are the limitation periods for personal injury. *Wilson v. Garcia*, 471 U.S. 261, 85 L. Ed. 2d 254 (1985).

[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 250, 109 S. Ct. 573, 606 (1989). Courts since *Wilson* have recognized the three-year period for personal injury in North Carolina actions as the statute of limitations period applicable to § 1983 actions. N.C. Gen. Stat. § 1-52 (5). *Hubbard v. Bohman*, No. 1:11 CV00716, 2013 U.S. Dist. LEXIS 66401 (M.D.N.C. May 8, 2013); *Reagan v. Hampton*, 700 F.Supp. 850 (M.D.N.C. 1988); *Hunt v. Robeson Cty.*, No. 5:10-CT-3112-FL, 2011 U.S. Dist. LEXIS 18239, (E.D.N.C. Feb. 23, 2011); *Reed v. United Transp. Union*, 633 F. Supp. 1516, 1525

(W.D.N.C. 1986); see also *Keller v. Prince George's County*, 827 F.2d 952, 955 n. 2, 965 (4th Cir. 1987)(recognizing that *Wilson v. Garcia* requires all § 1983 actions to be characterized as personal injury tort actions for statute of limitations purposes).

Although the limitations period for claims brought under § 1983 is borrowed from state law, the time for accrual of an action is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir.1996). In general, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Wallace*, 549 U.S. at 391. Plaintiff states that his wrongful arrest, conviction, detention, is the harm which forms the basis of his suit. It is abundantly clear that the events complained of in Plaintiff's initial Complaint and First Amended Complaint arose at the time of Plaintiffs 1976 arrest and conviction as to Lea.   The claims against Watters arose at the time of the 2005 Evidentiary Order. Therefore, the statute of limitations ran well before this Complaint was filed in 2021.

In a similar case, the Fourth Circuit affirmed dismissal of a plaintiff's claims for violations of his rights to due process and access to courts because the statute of limitations expired. *See Lawrence v. Cooper*, 398 Fed. Appx. 884 (4th Cir. 2010). In that case, the plaintiff was convicted of murder in 1997, and then in 2001, he filed a MAR. *Id.* at 886. In 2002, the Superior Court denied his MAR. *Id.* He appealed, but his appeals were denied and finalized by 2003. *Id.* In 2009, he filed his 1983 Complaint, wherein he alleged (among other things) that the "North Carolina Attorney General deliberately deprived him of meaningful access to the courts in violation of the due process clause of the Fourteenth Amendment." *Id.* This Court dismissed his Complaint as untimely, finding that his claims accrued in 2002, when the Superior Court denied his MAR. *Id.* at 886-87. The

33

Fourth Circuit affirmed. *Id.* at 887. In another similar case arising out of Texas, the plaintiff was wrongfully convicted of aggravated sexual assault and brought claims under 42 U.S.C. § 1983. *Moon v. City of El Paso*, 906 F.3d 352 (5th Cir. 2018). Prior to his conviction, in 1989, his attorney obtained DNA samples from the clerk's office evidenced by an entry on a "checkout document." *Id.* at 355. Later, the clerk's office could not find the "checkout document." *Id.* at 356. Plaintiff knew that the "checkout document" was lost as early as 1996. *Id.* Eventually, the "checkout document" was found and the plaintiff filed a habeas petition, which resulted in his release. *Id.*

After his release, the plaintiff in *Moon* sued the clerk's office for allegedly violating his due process right to access the courts. *Id.* The court found that plaintiff's claim against the clerk's office accrued in 1996, when he knew that the document was missing. *Id.* at 358. The Fifth Circuit affirmed the district court's ruling that plaintiff's claims against the clerk's office were time-barred. *Id.* at 358-59. Other courts that have considered alleged violations of post-conviction procedures (primarily DNA) have ruled that the statute of limitations begins to run when the plaintiff unsuccessfully seeks access to such evidence. *See Palmer v. District Attorney's Office of Allegheny Cnty*, 2017 WL 3481075 at *5 (W.D. Pa. Aug. 14, 2017) (compiling cases) In applying the above principles to this case, Plaintiff's claims against Moving Defendants were filed after the statute of limitations.

## CONCLUSION

For the reasons stated herein, the allegations of Plaintiff's First Amended Complaint fail to establish claims against Moving Defendants in either their official or individual capacities over which this Court has jurisdiction, or alternatively for which no relief can be granted. Therefore, Moving Defendants respectfully request that this Court grant their Motion to Dismiss.

34

Respectfully submitted this the _27th_ day of September, 2021.

                                            **JOSHUA H. STEIN**
                                            **ATTORNEY GENERAL**

                                            /s/Bryan G. Nichols
                                            Bryan G. Nichols
                                            Assistant Attorney General
                                            N.C. State Bar No. 42008
                                            N.C. Department of Justice
                                            Public Safety Section
                                            9001 Mail Service Center
                                            Raleigh, North Carolina 27699-9001
                                            Telephone:  (919) 716-6568
                                            Facsimile:  (919) 716-6761
                                            E-Mail:  bnichols@ncdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that the date indicated above, I electronically filed the foregoing

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** with the Clerk of the

Court using the CM/ECF system, which will send notice of such filing to the following registered

CM/ECF users:

Coleman M. Cowan, Esq.
Hoyt G. Tessener, Esq.
Kaitlyn Elizabeth Fudge, Esq.
Christopher R. Bagley, Esq.
Law Offices of James Scott Farrin
280 S. Mangum Street, Suite 400
Durham, NC 27701
*Attorneys for Plaintiff*

G. Chris Olson, Esq.
Olson Law, PLLC
514 Daniels Street, #136

35

Raleigh, NC 27605
*Attorneys for Plaintiff*

Patrick H. Flanagan, Esq.
Cranfill Sumner & Hartzog LLP
2907 Providence Road, Suite 200
Charlotte, NC 28211
*Attorneys for Defendant Van W. Isenhour, David J. Taylor, Estate of*
*George Monroe Vogler Jr., Estate of Marshall James Lee, Estate of Jack*
*Moore, Merl Hamilton, Guy Smith, and Gary Gacek*

This the 27th day of September, 2021.

/s/ Bryan G. Nichols
Bryan G. Nichols
Assistant Attorney General